IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAMAR BENTON** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-3818** |
| | : | |
| **KEVIN RANSOM, PENNSYLVANIA BOARD OF PROBATION AND PAROLE, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA** | : : : : : | |

# <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                                             **January 16, 2024**

      Lamar Benton seeks habeas relief from the Pennsylvania Parole Board's denials of his parole requests after interviewing him and reviewing his files in June 2022 and May 2023. He argues the Parole Board violated his due process rights by considering non-convicted charges. We studied the counseled petition, response, reply, and the submitted record. We agree with Mr. Benson he need not exhaust his state court remedies before seeking habeas relief on his constitutional due process claim in the denial of parole context. But we find no basis to grant habeas relief given our deference to the Parole Board's discretion when it proceeds in accord with defined factors. We are also not persuaded by Mr. Benton's argument the Parole Board considered an offense not resulting in the conviction. We do not see evidence, let alone a reference, to an offense not resulting in a conviction in the Board's decisions. We find no basis for a certificate of appealability.

     **I.**     **Adduced facts.**

      Lamar Benton pleaded guilty to illegally possessing a firearm, manufacturing, delivering, or possessing with an intent to manufacture or deliver a controlled substance, and receiving

stolen property on July 31, 2014.[1] Judge Daniel Anders of the Philadelphia Court of Common Pleas sentenced Mr. Benton to five-to-ten years of incarceration on October 7, 2014.[2]

### *The Parole Board grants Mr. Benton parole from his first sentence.*

The Pennsylvania Board of Probation and Parole granted Mr. Benton parole on November 26, 2018.[3] The Parole Board cited Mr. Benton's "participation and completion of prescribed institutional programs[,]" "positive institutional behavior[,]" "risk and needs assessment indicating [Mr. Benton's] level of risk to the community[,]" "stated remorse" for his conduct, and the Department of Corrections's "positive recommendation" as reasons for granting parole.[4] The Parole Board released Mr. Benton on parole on March 18, 2019.[5]

### *The Commonwealth charges Mr. Benton with several offenses while at liberty on parole.*

The Commonwealth charged Mr. Benton with illegally possessing a firearm as a felon, carrying a firearm without a license, illegally carrying a firearm in Philadelphia, simple assault, aggravated assault, conspiracy, recklessly endangering another person, and making terroristic threats with the intent of terrorizing another on April 22, 2020.[6] The Commonwealth withdrew its charges of aggravated assault, conspiracy, recklessly endangering another person, and making terroristic threats with the intent of terrorizing another.[7] The Commonwealth nolle prossed its charges of carrying a firearm without a license, illegally carrying a firearm in Philadelphia, and simple assault.[8]

The Commonwealth and Mr. Benton entered a negotiated guilty plea for the illegally possessing a firearm as a felon charge on November 1, 2021.[9] Pennsylvania Judge Diana Anhalt sentenced Mr. Benton to two-to-four years of incarceration.[10] Judge Anhalt's sentence afforded Mr. Benton parole eligibility beginning on January 2, 2022.[11] But the Parole Board did not recommit Mr. Benton to incarceration as a convicted parole violator until March 1, 2022.[12]

***The Parole Board twice denies Mr. Benton parole on his second sentence.***

The Parole Board denied Mr. Benton parole on June 3, 2022.[13] The Parole Board interviewed Mr. Benton and reviewed his file before denying him parole.[14] The Parole Board listed Mr. Benton's "prior unsatisfactory supervision history[,]" risk posed to the community as demonstrated by "reports, evaluations and assessments" of him, "lack of remorse for the offense(s) committed[,]" "history of firearm possession" and the "nature of [Mr. Benton's] crime."[15] The Parole Board allowed Mr. Benton to apply for parole "in or after May, 2023."[16]

The Parole Board again denied Mr. Benton parole on May 24, 2023.[17] The Parole Board again interviewed Mr. Benton and reviewed his file.[18] The Parole Board listed Mr. Benton's "prior unsatisfactory supervision history[,]" risk posed to the community as demonstrated by "reports, evaluations and assessments" of him, "minimization/denial of the nature and circumstances of the offense(s) committed[,]" and "lack of remorse for the offense(s) committed."[19]

**II.   Analysis**

Mr. Benton now petitions for habeas relief from the Parole Board's decision denying parole on his second sentence.[20] Mr. Benton argues the Parole Board violated his substantive due process rights by relying on "allegations/charges for which he was not convicted" in its decision denying him parole.[21] Mr. Benton argues he need not exhaust state court remedies before challenging his parole denial in federal court.[22] The Parole Board counters we must dismiss Mr. Benton's petition for failure to exhaust his state court remedies.[23] The Parole Board also counters Mr. Benton's petition lacks merit because there is no protected liberty interest in parole and Mr. Benton cannot bring a substantive due process challenge because the Parole Board followed the appropriate statutory factors in denying Mr. Benton parole.[24]

3

We disagree with the Parole Board's argument we lack jurisdiction on the basis Mr. Benton did not exhaust state court remedies because he brings a habeas petition challenging the constitutionality of his parole denial. But we deny and dismiss Mr. Benton's petition because the Commonwealth empowered the Parole Board to consider an incarcerated person's background and the Parole Board properly applied the statutory factors in its denial.

### A. Mr. Benton did not need to exhaust state court remedies.

Mr. Benton argues he need not exhaust his state court remedies because he asserts a constitutional challenge to his parole denial.[25] The Parole Board counters we must dismiss Mr. Benton's habeas petition because he failed to challenge the parole denial in the Commonwealth Court of Pennsylvania.[26] Mr. Benton did not fail to exhaust his state court remedies.

Habeas petitions challenging parole denials for violating the Ex Post Facto Clause are the only class of parole denial habeas claims amenable to state court remedy.[27] Habeas petitioners challenging parole denials on constitutional grounds need not be presented to state courts before filing a section 2254 petition.[28] For example, Judge Reid in *Goodman* held incarcerated persons cannot otherwise challenge parole denials because they are "discretionary matter[s] that [are] not subject to review" and relied upon our Court of Appeals's instruction.[29]

Mr. Benton asserts a federal due process challenge to his parole denial.[30] He did not need to first petition the Commonwealth Court of Pennsylvania before filing this habeas petition.

### B. The Parole Board did not violate Mr. Benton's due process rights.

Mr. Benton argues the Parole Board violated his due process rights by "us[ing] allegations/charges for which he was not convicted against him" to deny him parole.[31] Specifically, Mr. Benton argues in his response the Parole Board's consideration of later withdrawn charges violated his due process rights.[32] The Parole Board counters Mr. Benton

4

cannot bring a procedural due process claim because there is no constitutionally protected liberty interest in parole.[33] The Parole Board also counters Mr. Benton cannot bring a substantive due process claim because the Parole Board did not rely on constitutionally impermissible grounds in denying Mr. Benton parole and instead applied the statutory factors to deny Mr. Benton parole.[34] Mr. Benton cannot bring a procedural due process challenge to his parole denial and fails to bring a substantive due process challenge to his parole denial requiring we dismiss his habeas petition.[35]

We review parole board decisions under an abuse of discretion standard.[36] Our Court of Appeals instructs we must not "second-guess" parole boards and parole boards need only show "some basis for the challenged decision" existed to meet substantive due process requirements.[37] Parole denials bearing no "rational relationship to rehabilitation or deterrence" violate substantive due process.[38] "Unreasonable" parole denials do not violate substantive due process.[39] Parole denials must be "'conscience shocking' or 'deliberately indifferent'" to create a substantive due process violation.[40]

The Commonwealth directs the Parole Board on the several factors to consider when deciding whether to grant an incarcerated person parole and subsequent release.[41] The Parole Board may consider, among other things: "[t]he nature and circumstances of the offense committed . . . [t]he general character and background of the inmate . . . [and] [t]he conduct of the person while in prison and his physical, mental and behavioral condition and history, his history of family violence and his complete criminal record."[42]

We are guided by Judge Heffley's dismissal of a habeas petition challenging a parole denial as violating substantive due process even though the Parole Board considered the required statutory factors.[43] The Parole Board denied the petitioner in *Robinson* parole finding he

5

remained a "risk to the community[,]" "minimize[ed]/deni[ed] [] the nature and circumstances of the offense(s) committed[,]" and "refus[ed] to accept responsibility for the offense(s) committed."[44] The petitioner in *Robinson* challenged his parole denial arguing the Parole Board improperly considered several convictions stemming from the same judicial proceeding.[45] The Pennsylvania Sentencing Guidelines require a sentencing judge only consider the "most serious offense" in calculating the criminal defendant's Prior Record Score where multiple offenses stem from the same judicial proceeding.[46] Judge Heffley held the petitioner did not adduce record support for asserting the Parole Board relied on a "wildly overstated" version of the petitioner's criminal record.[47] But even if the Parole Board had considered the petitioner's previous convictions in denying parole it would not amount to a substantive due process violation because the Commonwealth allows the Parole Board to consider the incarcerated person's "complete criminal record."[48]

We are also guided by Chief Judge Mehalchick's dismissal of a habeas petition finding the Parole Board's application of the statutory factors could not create a substantive due process violation.[49] The Parole Board denied the petitioner in *Johnson* parole citing his "institutional behavior," "prior unsatisfactory parole supervision history[,]" "negative recommendation made by the prosecuting attorney[,]" "level of risk to the community[,]" and "minimization/denial of the nature and circumstances of the offense(s) committed" as reasons.[50] The *Johnson* petitioner argued the parole denial violated his due process rights.[51] Judge Mehalchick dismissed the petition finding the Parole Board "based its parole determination on factors that it is statutorily required to consider" and the petitioner "merely disagree[d] with the Board's decision."[52]

The Parole Board denied Mr. Benton parole after reviewing and applying the same statutory factors as the parole boards in *Robinson* and *Johnson*. The Parole Board cited Mr.

Benton's "prior unsatisfactory supervision history[,]" risk posed to the community as demonstrated by "reports, evaluations and assessments" of him, "minimization/denial of the nature and circumstances of the offense(s) committed[,]" and "lack of remorse for the offense(s) committed."[53] These are the same reasons the parole boards in *Robinson* and *Johnson* gave denying parole.[54] They are also the same or similar to the statutory factors the Parole Board must consider.[55] Mr. Benton's petition is similar to the *Johnson* petition Chief Judge Mehalchick considered because he attempts to create a constitutional violation from an appropriately supported parole decision. Mr. Benton's disagreement with the Parole Board's decision does not turn the denial into a constitutional violation.

Mr. Benton argues the Parole Board improperly considered criminal charges not leading to a conviction.[56] But the Parole Board did not state it considered one or another earlier criminal charge in its denial.[57] And the Parole Board is statutorily empowered to consider a petitioner's criminal history.[58] Mr. Benton fails to direct us to a constitutional violation in his parole denial warranting habeas relief.

       **C.     We find no basis for an evidentiary hearing.**

The Parole Board asks us to dismiss Mr. Benton's habeas petition without a hearing.[59] Congress through section 2254(e)(2) prevents us from holding an evidentiary hearing unless "[Mr. Benton] shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence" and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."[60]

We have no basis to find Mr. Benton met the stringent standards of section 2254(e)(2). Parole denials applying the statutory factors do not warrant an evidentiary hearing.[61]

### D. We find no basis for a certificate of appealability.

We find no basis for a certificate of appealability. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[62] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[63] Mr. Benton "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[64]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Benton's claims.

### III. Conclusion

Mr. Benton did not need to exhaust his state court process before seeking habeas relief challenging the Pennsylvania Parole Board's denial of his parole request based on due process challenges. But Mr. Benton does not state a basis for habeas relief based on a due process claim. We deny and dismiss his petition. We find no basis for an evidentiary hearing. We deny a certificate of appealability.

---

[1] ECF No. 4-1 at 5; ECF No. 1 at 1.

[2] ECF No. 4-1 at 5.

[3] *Id.* at 9.



[4] *Id.*

[5] *Id.* at 12.

[6] *Id.* at 17.

[7] *Id.*

[8] *Id.* at 18.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 27.

[13] *Id.* at 30.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.* at 33.

[18] *Id.*

[19] *Id.* Mr. Benton argues the Parole Board denied him parole because it considered charges the Commonwealth later withdrew. ECF No. 5 at 2; *see* ECF No. 4-1 at 17. The Parole Board did not mention it considered later withdrawn charges in its decision. *See id.* at 30. We lack a basis to find it did.

[20] ECF No. 1 at 1.

[21] *Id.* at 1, 5. Mr. Benton's habeas petition claims a "due process" violation without specifying whether the Parole Board violated his substantive or procedural due process rights. *See id.* Mr. Benton clarifies the Parole Board violated his substantive due process rights in his reply brief. ECF No. 5 at 1.

[22] ECF No. 1 at 5.

---

[23] ECF No. 4 at 2-5.

[24] *Id.* at 5-9.

[25] ECF No. 1 at 5.

[26] ECF No. 4 at 4.

[27] *Barnes v. Wenerowicz*, 280 F.R.D. 206, 217 (E.D. Pa. 2012) (citing *Parker v. Kelchner*, 429 F.3d 58, 61 (3d Cir. 2005)).

[28] *Goodman v. Wahl, et al.*, No. 23-2705, 2023 WL 9065593, at *2 (E.D. Pa. Dec. 8, 2023), *report and recommendation adopted sub nom. Goodman v. Wahl*, No. 23-2705, 2024 WL 37938 (E.D. Pa. Jan. 3, 2024) (citing *Benchoff v. Colleran*, 404 F.3d 812, 819 (3d Cir. 2005)).

[29] *Goodman*, 2023 WL 9065593, at *2 (E.D. Pa. Dec. 8, 2023) (citing *Pagan v. Tice*, No. 22-3308, 2023 WL 3903135 (E.D. Pa. May 10, 2023), *report and recommendation adopted*, 2023 WL 3898903 (E.D. Pa. June 8, 2023)).

[30] ECF No. 1 at 5.

[31] *Id.*

[32] ECF No. 5 at 2.

[33] ECF No. 4 at 7.

[34] *Id.* at 7-9.

[35] It is unclear whether Mr. Benton brings a procedural due process challenge to his parole denial. He argues in his response "his substantive due process violation claims have merit." ECF No. 5 at 2. We would still deny Mr. Benton's procedural due process challenge (if he brought one) to his parole denial because there is no protected liberty interest "in the expectation of release on parole." *Alford v. Laquise*, 604 F. App'x 93, 94 (3d Cir. 2015).

[36] *Ellerby v. Eckard*, No. 15-5900, 2016 WL 2996220, at *3 (E.D. Pa. Apr. 29, 2016), *report and recommendation adopted*, 2016 WL 2989001 (E.D. Pa. May 23, 2016) (citing *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)).

[37] *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001).

[38] *Robinson v. PA Bd. of Prob. & Parole*, No. 20-6039, 2021 WL 11586120, at *3 (E.D. Pa. Mar. 15, 2021) (quoting *Block*, 631 F.2d at 237).

[39] *Hunterson v. DiSabato*, 308 F.3d 236, 246-47 (3d Cir. 2002).

[40] *Id.* at 247.

[41] 61 PA. STAT. AND CONS. STAT. ANN. § 6135.

[42] 61 PA. STAT. AND CONS. STAT. ANN. § 6135(a)(1), (a)(3), and (a)(7).

[43] *Robinson*, 2021 WL 11586120 (E.D. Pa. Mar. 15, 2021).

[44] *Id.* at *2.

[45] *Id.* at *4.

[46] *Id.* (citing 204 PA. CODE § 303.5).

[47] *Id.* at *5.

[48] *Id.* (citing 61 PA. STAT. AND CONS. STAT. ANN. § 6135(a)(7)).

[49] *Johnson v. McGinley*, No. 21-1280, 2022 WL 17228668 (M.D. Pa. Oct. 13, 2022).

[50] *Id.* at *6.

[51] *Id.* at *5.

[52] *Id.* at *6.

[53] ECF No. 4-1 at 33.

[54] *Robinson*, 2021 WL 11586120, at *2; *McGinley*, 2022 WL 17228668 at *6.

[55] 61 PA. STAT. AND CONS. STAT. ANN. § 6135(a)(1) ("The nature and circumstances of the offense committed.").

[56] ECF No. 1 at 5.

[57] *See* ECF No. 4-1 at 33.

[58] 61 PA. STAT. AND CONS. STAT. ANN. § 6135(a)(7).

[59] ECF No. 4 at 6.

[60] 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 596 U.S. 366, 388 (2022).

[61] *Garcia v. Sauers*, No. 12-4468, 2013 WL 5422802 (E.D. Pa. Sept. 27, 2013).

---

[62] 28 U.S.C. § 2253(c)(1)(A).

[63] 28 U.S.C. § 2253(c)(2).

[64] *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).